IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HELEN SEMANSKI, | : | Civil No.  1:23-CV-414 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | (Magistrate Judge Carlson) |
| | : | |
| FRANK BISIGNANO,[1] | : | |
| Commissioner of Social Security | : | |
| | : | |
| Defendant. | : | |

**<u>MEMORANDUM OPINION</u>**

I.    **<u>Introduction</u>**

The ability to ambulate without assistance is often a key component to employment. Therefore, when ambulation is impaired, it follows that the ability to work is undermined. Social Security regulations recognize this basic truth and specifically contemplate that the "requirement to use a hand-held assistive device may . . . impact on the individual's functional capacity by virtue of the fact that one or both upper extremities are not available for such activities as lifting, carrying,

---

[1]Frank Bisignano became the Commissioner of Social Security on May 6, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Frank Bisignano should be substituted as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

1

pushing, and pulling." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00(J)(4). Thus, the issue of whether a claimant requires an assistive device to ambulate is one that can be outcome determinative in disability cases. For this reason, an Administrative Law Judge's (ALJ) decision eschewing a claimant's need to use a cane must be accompanied by "a clear and satisfactory explication of the basis on which it rests." Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981).

We are reminded of these guiding tenets of Social Security practice as we turn to this case. Helen Semanski was an older worker, 59 years old, when she applied for disability benefits. Semanski had suffered a stroke, which left her experiencing longstanding right-side weakness and instability. With respect to these impairments, one fact was entirely undisputed: Semanski needed a cane to balance and walk or stand for prolonged periods. Semanski herself described her need to use a cane to ambulate on several occasions. (Tr. 271-72). Semanski's friend, Catherine Elick, confirmed that Semanski needed to use a cane "when her leg drags" or when she engaged in extensive walking. (Tr. 263). And, remarkably, there was an absolute unanimity of medical opinion among two state agency experts, a consulting examining source, and Semanski's treating caregiver that she required a cane for balance. (Tr. 84, 86, 107, 3222, 3224, 3228, 3230, 3824). In short, everyone agreed that Helen Semanski needed a cane to safely ambulate.

2

Everyone, that is, except for the ALJ who decided this case. Discounting this medical consensus based upon his own lay view of the clinical record, the ALJ found that Semanski did not need a cane and made no provision for her use of a cane when crafting her residual functional capacity (RFC). Instead, the ALJ reached the remarkable conclusion that Semanski—an elderly stroke survivor with ongoing right side deficits which called for use of a cane—could "climb ramps and stairs frequently, climb ladders, ropes, or scaffolds occasionally, balance frequently, stoop frequently, kneel frequently, crouch frequently, and crawl frequently." (Tr. 20).

This was error and error which now compels the remand of this case. Indeed, in similar circumstances we have held that when an ALJ crafts an RFC for a claimant that includes significant mobility requirements, without accounting for their need for an assistive device, a remand is warranted. See Stahurski v. O'Malley, No. 3:22-CV-1807, 2024 WL 3204243, at *1 (M.D. Pa. June 27, 2024); Jordan v. Kijakazi, No. 1:21-CV-01975, 2023 WL 2616099 (M.D. Pa. Mar. 23, 2023); Dieter v. Saul, No. 1:19-CV-1081, 2020 WL 2839087 (M.D. Pa. June 1, 2020). Accordingly, for the reasons set forth below, we will remand this case for further consideration by the Commissioner.

## II.    Statement of Facts and of the Case

Because we have determined that a remand is necessary due to the failure of the ALJ to account for Semanski's use of an assistive device in the RFC assessment, we will focus exclusively upon this issue when assessing the record.

On December 29, 2020, Helen Semanski filed a claim for disability and disability insurance benefits (DIB) under Title II of the Social Security Act, alleging an onset of disability beginning January 27, 2020. (Tr. 15). Semanski was born on August 19, 1961, (Tr. 460), and was approximately 59 years old on the alleged date of the onset of her disability, which was defined as an individual of advanced age under the Commissioner's regulations. 20 C.F.R. § Pt. 404, Subpt. P, App. 2. She has a college education and previously worked as an elementary school teacher. (Tr. 24).

On her application for disability benefits, Semanski alleged she was disabled due to a 2012 stroke, or cerebrovascular accident, and longstanding residual mild right-sided hemiparesis, or weakness and reduced motor control. (Tr. 17). While the clinical record contained some notations indicating that Semanski did not use a cane, (tr. 1288, 3496, 3585, 3641), treatment notes in the decade following her stroke often described an antalgic gait, along with possession and use of a cane. (Tr. 460, 469, 473, 491, 952, 1109, 1118, 1225, 1317).

For her part, Semanski explained that she walked with a cane for balance and when she felt weak. (Tr. 56, 271-72). Semanski's use of a cane was confirmed by Catherine Elick, a friend for more than a decade who reported that Semanski used a cane following her stroke whenever "her leg drags," or she walked extensively. (Tr. 263).

Moreover, every medical source who considered Semanski's case found that her use of a cane to ambulate was medically necessary due to her impaired balance. For example, on March 29, 2021, Dr. Marielle Stone, an independent consulting examining physician, reported that Semanski used a cane to balance and walk. (Tr. 3222, 3224, 3228, 3230).

On April 19, 2021 during an initial disability determination, a state agency expert, Dr. Chan Chung, found that Semanski's use of a cane was medically necessary stating that: "A cane is needed for balance." (Tr. 64). Dr. Chung later elaborated that Semanski required this assistive device both for balance and when her right side "gets weak." (Tr. 86). In addition to the need to use a cane to ambulate safely, Dr. Chung opined that Semanski was limited to sedentary work. (Tr. 89). On reconsideration in September of 2021, a second state agency expert, Dr. Joanna Deleo, agreed that: "A medically required hand-held device is necessary for ambulation," (tr. 107), citing Semanski's use of a cane for balance and to compensate

for her right side weakness. (Tr. 109). Dr. Deleo also agreed that Semanski's impairments confined her to sedentary work. (Tr. 113).

These medical opinions confirming Semanski's need for a cane were further bolstered by a treating source statement submitted on February 21, 2022 by Kayla Gegaris, Semanski's treating physician assistant. (Tr. 281-24). PA Gegaris also cited Semanski's need for a cane due to her difficulties with ambulation as a factor which left her disabled. Thus, the medical opinion evidence in this case was noteworthy in its unanimity: every medical source agreed that Semanski required a cane to safely ambulate.

It was against the backdrop of this medical consensus agreeing that Semanski needed a cane to ambulate that the ALJ heard this case on March 8, 2022. (Tr. 32-69). At this hearing Semanski and a Vocational Expert (VE) testified. (Id.) In her testimony Semanski reiterated her need to use a cane to ambulate. (Tr. 56). A vocational expert also testified at the hearing and clearly stated that if Semanski needed a cane to ambulate and was confined to sedentary work she could no longer perform her past work as an elementary school. (Tr. 67). Thus, the VE unequivocally stated that the medical consensus that Semanski required a cane to walk was work preclusive.

Following this hearing, the ALJ issued a decision denying Semanski's claim on April 20, 2022. (Tr. 12-31). In that decision, the ALJ first concluded that Semanski had not engaged in substantial gainful activity since her alleged onset date of disability, January 27, 2020, and that she met the insured status requirements of the Social Security Act through December 31, 2025. (Tr. 17). At Step 2 of the sequential analysis that governs Social Security cases, the ALJ found that Semanski had the following severe impairments: cerebrovascular accident with mild right-sided hemiparesis. (Tr. 17). At Step 3, the ALJ determined that Semanski's impairments or combination of impairments did not meet or medically equal one of the listed impairments. (Tr. 20).

Between Steps 3 and 4, the ALJ concluded that Semanski retained the following residual functional capacity:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except that the claimant can climb ramps and stairs frequently, climb ladders, ropes, or scaffolds occasionally, balance frequently, stoop frequently, kneel frequently, crouch frequently, and crawl frequently. Further, the claimant is limited to frequent exposure to unprotected heights and moving mechanical parts.

(Id.)

Remarkably, this RFC determination made absolutely no provision for Semanski's use of a cane, despite the fact that Semanski stated she needed a cane; her statements were corroborated by a third party; and every medical source clearly stated that a cane was medically necessary in her case. The ALJ justified the decision to discount this unanimous medical consensus based upon his lay evaluation of the clinical record. (Tr. 22-24). The ALJ also rejected the state agency expert opinions which confined Semanski to sedentary work. (Id.)

Having discounted this undisputed body of evidence, the ALJ then found that Semanski could return to her past work as an elementary teacher, (tr. 24-25), work which the VE testified she could not perform if she required a cane to ambulate. Thus, the ALJ concluded Semanski had not met the exacting standard of disability and denied her claim. (Id.)

This appeal followed. (Doc. 1). On appeal, Semanski argues, *inter alia*, that substantial evidence does not support the ALJ's RFC assessment because the ALJ failed to properly address her undisputed cane use in determining the RFC. We agree. Accordingly, we will remand this case for further consideration by the Commissioner.

III.    **Discussion**

A.    **Substantial Evidence Review – the Role of this Court**

When reviewing the Commissioner's final decision denying a claimant's application for benefits, this Court's review is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record. See 42 U.S.C. §405(g); Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 200 (3d Cir. 2008); Ficca v. Astrue, 901 F. Supp.2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552, 565 (1988). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. Richardson v. Perales, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993). But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is

9

supported by substantial evidence the court must scrutinize the record as a whole."

Leslie v. Barnhart, 304 F. Supp.2d 623, 627 (M.D. Pa. 2003).

The Supreme Court has recently underscored for us the limited scope of our review in this field, noting that:

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. T-Mobile South, LLC v. Roswell, 574 U.S. ——, ——, 135 S.Ct. 808, 815, 190 L.Ed.2d 679 (2015). Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938) (emphasis deleted). And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is "more than a mere scintilla." Ibid.; see, e.g., Perales, 402 U.S. at 401, 91 S.Ct. 1420 (internal quotation marks omitted). It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison, 305 U.S. at 229, 59 S.Ct. 206. See Dickinson v. Zurko, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).

Biestek, 139 S. Ct. at 1154.

The question before this Court, therefore, is not whether the claimant is disabled, but rather whether the Commissioner's finding that he is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. See Arnold v. Colvin, No. 3:12-CV-02417, 2014 WL 940205,

10

at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence") (alterations omitted); Burton v. Schweiker, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); see also Wright v. Sullivan, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); Ficca, 901 F. Supp.2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

Several fundamental legal propositions which flow from this deferential standard of review. First, when conducting this review "we are mindful that we must not substitute our own judgment for that of the fact finder." Zirnsak v. Colvin, 777 F.3d 607, 611 (3d Cir. 2014) (citing Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2005)). Thus, we are enjoined to refrain from trying to re-weigh the evidence. Rather our task is to simply determine whether substantial evidence supported the ALJ's findings. However, we must also ascertain whether the ALJ's decision meets the burden of articulation demanded by the courts to enable informed judicial review. Simply put, "this Court requires the ALJ to set forth the reasons for his decision." Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 119 (3d Cir. 2000). As the Court of Appeals has noted on this score:

11

> In <u>Burnett</u>, we held that an ALJ must clearly set forth the reasons for his decision. 220 F.3d at 119. Conclusory statements . . . are insufficient. The ALJ must provide a "discussion of the evidence" and an "explanation of reasoning" for his conclusion sufficient to enable meaningful judicial review. <u>Id</u>. at 120; <u>see Jones v. Barnhart</u>, 364 F.3d 501, 505 & n. 3 (3d Cir.2004). The ALJ, of course, need not employ particular "magic" words: "<u>Burnett</u> does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis." <u>Jones</u>, 364 F.3d at 505.

<u>Diaz v. Comm'r of Soc. Sec.</u>, 577 F.3d 500, 504 (3d Cir. 2009).

Thus, in practice ours is a twofold task. We must evaluate the substance of the ALJ's decision under a deferential standard of review, but we must also give that decision careful scrutiny to ensure that the rationale for the ALJ's actions is sufficiently articulated to permit meaningful judicial review.

### B.      <u>Initial Burdens of Proof, Persuasion, and Articulation for the ALJ</u>

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A); <u>see also</u> 20 C.F.R. §404.1505(a). To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy. 42

U.S.C. §423(d)(2)(A); 20 C.F.R. §404.1505(a). To receive benefits under Title II of the Social Security Act, a claimant must show that he or she contributed to the insurance program, is under retirement age, and became disabled prior to the date on which he or she was last insured. 42 U.S.C. §423(a); 20 C.F.R. §404.131(a).

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process. 20 C.F.R. §404.1520(a). Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC").  20 C.F.R. §404.1520(a)(4).

Between Steps 3 and 4, the ALJ must also assess a claimant's residual functional capacity (RFC).  RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); see also 20 C.F.R. §§404.1520(e), 404.1545(a)(1).  In making this assessment, the ALJ considers all of the claimant's medically determinable impairments, including any non-severe

13

impairments identified by the ALJ at step two of his or her analysis. 20 C.F.R. §404.1545(a)(2).

There is an undeniable medical aspect to an RFC determination, since that determination entails an assessment of what work the claimant can do given the physical limitations that the claimant experiences. Yet, when considering the role and necessity of medical opinion evidence in making this determination, courts have followed several different paths. Some courts emphasize the importance of medical opinion support for an RFC determination and have suggested that "[r]arely can a decision be made regarding a claimant's residual functional capacity without an assessment from a physician regarding the functional abilities of the claimant." Biller v. Acting Comm'r of Soc. Sec., 962 F. Supp. 2d 761, 778–79 (W.D. Pa. 2013) (quoting Gormont v. Astrue, Civ. No. 11–2145, 2013 WL 791455 at *7 (M.D. Pa. Mar. 4, 2013)). In other instances, it has been held that: "There is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC." Titterington v. Barnhart, 174 F. App'x 6, 11 (3d Cir. 2006). Further, courts have held in cases where there is no evidence of any credible medical opinion supporting a claimant's allegations of disability that "the proposition that an ALJ must always base his RFC on a medical opinion from a

14

physician is misguided." <u>Cummings v. Colvin</u>, 129 F. Supp. 3d 209, 214–15 (W.D. Pa. 2015).

These seemingly discordant legal propositions can be reconciled by evaluation of the factual context of these decisions. Those cases which emphasize the importance of medical opinion support for an RFC assessment typically arise in the factual setting where a well-supported medical source has identified limitations that would support a disability claim, but an ALJ has rejected the medical opinion which supported a disability determination based upon a lay assessment of other evidence. <u>Biller</u>, 962 F.Supp.2d at 778–79. In this setting, these cases simply restate the commonplace idea that medical opinions are entitled to careful consideration when making a disability determination, particularly when those opinions support a finding of disability. In contrast, when an ALJ is relying upon other evidence, such as contrasting clinical or opinion evidence or testimony regarding the claimant's activities of daily living, to fashion an RFC courts have adopted a more pragmatic view and have sustained the ALJ's exercise of independent judgment based upon all of the facts and evidence. <u>See Titterington v. Barnhart,</u> 174 F. App'x 6, 11 (3d Cir. 2006); <u>Cummings v. Colvin</u>, 129 F. Supp. 3d 209, 214–15 (W.D. Pa. 2015). In either event, once the ALJ has made this determination, our review of the ALJ's assessment of the plaintiff's RFC is deferential, and that RFC assessment will not be set aside if

15

it is supported by substantial evidence. Burns v. Barnhart, 312 F.3d 113, 129 (3d Cir. 2002); see also Metzger v. Berryhill, No. 3:16-CV-1929, 2017 WL 1483328, at *5 (M.D. Pa. Mar. 29, 2017), report and recommendation adopted sub nom. Metzgar v. Colvin, No. 3:16-CV-1929, 2017 WL 1479426 (M.D. Pa. Apr. 21, 2017); Rathbun v. Berryhill, No. 3:17-CV-00301, 2018 WL 1514383, at *6 (M.D. Pa. Mar. 12, 2018), report and recommendation adopted, No. 3:17-CV-301, 2018 WL 1479366 (M.D. Pa. Mar. 27, 2018).

At Steps 1 through 4, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her in engaging in any of his or her past relevant work. Mason, 994 F.2d at 1064. Once this burden has been met by the claimant, it shifts to the Commissioner at Step 5 to show that jobs exist in significant number in the national economy that the claimant could perform that are consistent with the claimant's age, education, work experience and RFC. 20 C.F.R. §404.1512(f); Mason, 994 F.2d at 1064.

The ALJ's disability determination must also meet certain basic substantive requisites. Most significant among these legal benchmarks is a requirement that the ALJ adequately explain the legal and factual basis for this disability determination. Thus, in order to facilitate review of the decision under the substantial evidence standard, the ALJ's decision must be accompanied by "a clear and satisfactory

16

explication of the basis on which it rests." Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981). Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. Id. at 706-07. In addition, "[t]he ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." Schaudeck v. Comm'r of Soc. Sec., 181 F.3d 429, 433 (3d Cir. 1999).

It is against this backdrop that we evaluate the decision of the ALJ in this case.

## C.    **This Case Will Be Remanded for Further Review.**

On appeal, the plaintiff argues the ALJ failed to properly address her cane use in determining the RFC.

We agree.

Case law and Social Security regulations both recognize that a claimant's need to use an assistive device to ambulate can dramatically and adversely affect the ability to perform work on a sustained basis. Accordingly, in certain instances, the use of a cane to ambulate can be outcome determinative in a Social Security appeal. At the outset, in order to rely upon evidence regarding the use of a cane to sustain a disability claim, the assistive device must be medically necessary. On this score:

> Social Security regulations provide that an ALJ will not accommodate the use of a cane unless the claimant first provides "medical documentation establishing the need for a hand-held assistive device to

17

aid in walking or standing, and describing the circumstances for which it is needed[.]" SSR 96–9p. Absent such documentation, an ALJ need not accommodate the use of a cane in a residual functional capacity assessment, even if the claimant was prescribed a cane by a doctor.

Williams v. Colvin, No. 3:13-CV-2158, 2014 WL 4918469, at *10 (M.D. Pa. Sept. 30, 2014) (citing Howze v. Barnhart, 53 Fed.Appx. 218, 222 (3d Cir. 2002)).

However, if the claimant makes this threshold showing of medical necessity, then it is incumbent upon the ALJ to directly "address the evidence concerning Plaintiff's use of" the assistive device. Steward v. Comm'r of Soc. Sec., No. CIV.A 08-1741, 2009 WL 1783533, at *5 (W.D. Pa. June 23, 2009). Moreover, the failure to do so may require a remand. Id. In short, where substantial evidence indicates that there is a medical need for a claimant to use a cane or assistive device, the failure to adequately address these issues constitutes a failure of articulation by the ALJ warranting a remand. See e.g., Graver v. Colvin, No. 3:13CV1811, 2014 WL 1746976, at *5 (M.D. Pa. May 1, 2014); Butler v. Astrue, No. CIV.A. 11-376, 2012 WL 1252758, at *7 (W.D. Pa. Apr. 13, 2012). These principles which recognize the limiting effects of an assistive device on employment apply with particular force in a case such as this when an ALJ crafts an RFC for a claimant that includes significant mobility requirements, without accounting for her need for a cane. See Dieter, 2020 WL 2839087, at *9. In such instances a remand may be necessary.

18

This case presents an extraordinary constellation of facts. At age 59, Helen Semanski was an elderly disability applicant, a fact which was not acknowledged by the ALJ in this decision. The uncontested evidence revealed that she had suffered a strike in 2012, and that stroke had left her experiencing residual weakness and limited mobility on her right side. As a result, she used a cane to ambulate and for balance.

In a remarkable show of unanimity every medical source agreed that Semanski needed a cane to ambulate safely. Furthermore, a Vocational Expert testified that the use of a cane would bar Semanski from her past employment. Therefore, the evidence clearly demonstrated both that a cane was a medical necessity for Semanski, and this medical necessity precluded her from returning to her past employment. Accordingly, this uncontested evidence that Semanski's cane use was medically necessary was potentially outcome determinative. See 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00(J)(4); SSR 96-9p. See also  Ubiles v. Berryhill, No. 15-CV-895-RJA-MJR, 2017 WL 4712208, at *6 (W.D.N.Y. Sept. 29, 2017), report and recommendation adopted, No. 1:15-CV-00895 (MAT), 2017 WL 4680492 (W.D.N.Y. Oct. 18, 2017) (citing Wright v. Colvin, No. 6:13-cv-6585(MAT), 2015 WL 4600287, at *5 (W.D.N.Y. July 29, 2015) ("If Plaintiff needs to use a cane for support and balance, that would mean at least one hand is are [sic] not free to hold

19

other objects and perform the lifting and carrying requirements of light work, which are not minimal.").

While the ALJ attempted to justify discounting this medical consensus based upon his lay interpretation of the clinical evidence, this rationale is unpersuasive and unavailing. Rather, it is  axiomatic that an "ALJ cannot, . . ., disregard this medical opinion based solely on his own 'amorphous impressions, gleaned from the record.'" Morales v. Apfel, 225 F.3d 310, 318 (3d Cir. 2000). Likewise, it is clear that "an ALJ may not reject an uncontradicted treating source medical opinion with only lay reinterpretation of medical evidence." Tilton v. Colvin, 184 F. Supp. 3d 135, 143 (M.D. Pa. 2016). Yet that is precisely what the ALJ did in this case when he discounted  the unanimous views of four medical sources that Semanski needed to use a cane based solely upon his lay reinterpretation of the evidence. This was error and constituted prejudicial error where the evidence indicated that use of a cane was work preclusive.

The flaws in the ALJ's analysis are particularly apparent and acute when one considers the RFC fashioned in this case and compares that RFC to Semanski's impairments. At the time of her disability application Helen Semanski was an elderly stroke survivor with chronic right side weakness which led every witness to state that she needed a cane. Yet, incredibly, the ALJ concluded that she could "climb

20

ramps and stairs frequently, climb ladders, ropes, or scaffolds occasionally, balance frequently, stoop frequently, kneel frequently, crouch frequently, and crawl frequently." (Tr. 20). Given her uncontested impairments, the notion that Semanski could climb ladders, ropes, or scaffolds occasionally, balance frequently, stoop frequently, kneel frequently, crouch frequently, and crawl frequently is simply not credible.

Since the ALJ's burden of articulation is not met in the instant case, this matter must be remanded for further consideration by the Commissioner. Yet, while we reach this result, we note that nothing in this Memorandum Opinion should be deemed as expressing a judgment on what the ultimate outcome of any reassessment of this evidence should be. Rather, the task should remain the duty and province of the ALJ on remand. Because we have found a basis for remand on these grounds, we need not address the plaintiff's remaining arguments since "[a] remand may produce different results on these claims, making discussion of them moot." Burns v. Colvin, 156 F.Supp.3d 579, 598 (M.D. Pa. Jan. 13, 2016).

## IV.   Conclusion

For the foregoing reasons the plaintiff's request for a new administrative hearing will be GRANTED, the final decision of the Commissioner denying these

21

claims will be vacated, and this case will be REMANDED to the Commissioner to conduct a new administrative hearing.

An appropriate order follows.

*S/ Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge

DATED: March 13, 2026